# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:07-CR-10 |
| v. | MEMORANDUM OPINION |
| KENNETH G. MASON, BIRGIT MECHLENBURG, et al. *Defendants.* | JUDGE NORMAN K. MOON |

Defendants Kenneth G. Mason ("Mason") and Birgit Mechlenburg ("Mechlenburg") were sentenced to terms of imprisonment on charges arising out of the Vavasseur fraud, a scheme conceived and masterminded by Terry Dowdell ("Dowdell"). The court delayed imposition of restitution as to Mason and Mechlenburg to afford counsel the opportunity to arrive at agreed upon restitution figures. As counsel have been unable to reach an agreement, the court must decide the matter in light of the parties' briefs and arguments made before the court at a hearing on March 4, 2011. For the reasons given below, the court holds that Mason and Mechlenburg will be held liable, jointly and severally, for restitution in the amount of $22,963,945.

## I.

The facts of this case are not generally in dispute. In a related criminal action, *United States v. Dowdell*, No. 3:02-cr-107, the court imposed restitution on Dowdell in an amount to be determined in a then pending civil case, *SEC v. Dowdell et al.*, No. 3:01-cv-00116. Pursuant to an agreement in that case, Dowdell was ordered to pay $121,235,000, plus $8,611,214 in prejudgment interest for disgorgement and civil penalties to the court appointed receiver, Roy M.

Terry, Esq. In this case, the court has already entered restitution orders against co-defendants Michael Hardesty ("Hardesty") and Robert June ("June") in the amounts of $610,000 and $1,205,000, respectively, also to be paid to the receiver. The receiver has determined, and the parties do not dispute, that the net shortfall for victims of the Vavasseur scheme is $59,466,436. According to court approved claims, the receiver has made distributions to victims in the amount of $34,687,491. Therefore, the government asks that Mason and Mechlenburg be held jointly and severally liable for the remaining balance, $24,778,945.[1]

Mason argues that he should instead be liable for a total of $583,799, which represents Mason's commissions and fees from Vavasseur, as determined by the SEC, less $29,967 in payments already made, for a net figure of $553,832. A related, possible alternative is $540,106, the amount of a disgorgement order entered pursuant to an agreement in the SEC case. Mechlenburg proposes three figures:

> (1) $66,044 - the amount of a wire transfer from Dowdell to Mechlenburg, which she has specifically admitted to receiving by pleading guilty to Count 2 of the Indictment;
>
> (2) $1,609,496 - the amount of a disgorgement order entered in *SEC v. Dowdell*; or
>
> (3) $1.72 million - the loss to victims Mechlenburg persuaded to join the Vavasseur scheme (approximately $4.3 million) discounted by 60%.[2]

One of two statutes governs restitution decisions in federal court: the Victim Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, or the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A *et seq.*, ("MVRA"). The acts are "substantially the same [except] the VWPA *permits* a district court to order restitution subject to a defendant's ability to pay and the MVRA *mandates* restitution for certain crimes without consideration to the defendant's ability to pay."

---

[1] Figures are rounded off to the nearest dollar.

[2] Mechlenburg reasons that as the receiver has paid out some 60% of claims, a 60% discount should be applied to the total loss incurred by her investors ($4.3 million * 40% = $1.72 million). Assuming that $4.3 million is the appropriate baseline figure of restitution in Mechlenburg's case, it is doubtful that such a discount ought to be applied.

*United States v. Lomas*, 392 Fed. App'x 122, 124 n.1 (4th Cir. 2010) (unpublished opinion). As the MVRA applies to sentencing proceedings for crimes "committed by fraud or deceit," it is the applicable statute here. 18 U.S.C. § 3663A(c)(1)(A)(ii).

The statute requires the court to order restitution "in the full amount of each victim's losses." 18 U.S.C. § 3664(f)(1)(a). A "victim" is defined as a person "directly and proximately harmed as a result of the commission of an offense . . . ." 18 U.S.C. § 3663A(a)(2). Accordingly, "an order of restitution under the MVRA is to be based upon the loss directly and proximately caused by the defendant's offense conduct." *United States v. Squirrel*, 588 F.3d 207, 215 (4th Cir. 2009). A defendant may be liable in restitution for the conduct of his co-conspirators, provided that such conduct was in furtherance of the conspiracy and reasonably foreseeable to the defendant. *United States v. Newsome*, 322 F.3d 328, 338 (4th Cir. 2003) (citing *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946)). *See also United States v. Laney,* 189 F.3d 954, 964-66 (9th Cir. 1999) (holding that losses caused by a conspiracy include "not only those resulting from the defendant's individual actions, but also others caused by the conspiracy itself."). However, the court may mitigate the impact of the restitutionary order on the defendant by adjusting the "manner" of payment or apportioning the total loss among the defendants. *Newsome*, 322 F.3d at 341 (citing 18 U.S.C. §§ 3664(f), (h)).

It would be proper to hold Mechlenburg and Mason jointly and severally liable for the total loss caused by the Vavassuer conspiracy. At the outset, I reject the alternate restitution figures proposed by Mason and Mechlenburg, as they do not properly describe the "loss caused by the offense." *Newsome*, 322 F.3d at 341. Mechlenburg has asked that the court impose restitution in the amount of a $66 thousand wire transfer from Dowdell. But because this figure represents only a single payment to Mechlenburg, it does not come close to measuring the loss

suffered by victims of her conduct. Similarly, I reject the suggestion that the court impose restitution in the amount of the disgorgement orders entered in the SEC case, or any similar figures. These figures represent the defendants' ill-gotten gains, but do not reflect the scope of loss suffered by their victims. The MVRA holds a defendant responsible "for all of the losses that he caused, not simply the losses that wound up in [his] own pocket." *United States v. Hunt*, 521 F.3d 636, 648 (6th Cir. 2008). Nor would it be appropriate to impose restitution in the amount of net losses incurred by investors whom Mechlenburg and Mason brought in to the scheme. This is particularly apparent in the case of Mason, whose investors apparently suffered no net loss.

As Mechlenburg and Mason were integral to the formation of Vavasseur, it is evident that the entire scope of damage caused by the conspiracy was reasonably foreseeable to them. *Newsome*, 322 F.3d at 338. It is particularly significant that Mechlenburg and Mason worked with Dowdell on the fraudulent RIA investment program, a predecessor to Vavasseur, the "returns" of which were shown to victims in an attempt to induce them to invest. Furthermore, Mechlenburg and Mason participated in Vavasseur for the duration of the conspiracy. *Cf. United States v. Stutesman*, 391 Fed. App'x 646, 648-49 (9th Cir. 2010) (remanding for reconsideration where defendant withdrew from the conspiracy at an early stage). In addition to working on RIA, they convinced victims to invest at least $13.7 million and $400 thousand respectively. Moreover, even after the court ordered an asset freeze in 2001, Mechlenburg and Mason continued their efforts to perpetuate the scheme. For example, Mechlenburg unsuccessfully attempted to wire $59,000 out of the country and continued to receive funds overseas through an entity hidden from the SEC. Mason communicated with co-conspirators as late as April 2002, indicating that his clients were interested in reinvesting in Vavasseur. He also continued to

receive payments through a 50/50 fee splitting arrangement with Mechlenburg. In light of their role in the incipient stages of the conspiracy, their efforts to perpetuate the scheme in spite of the court's order, and their continued involvement through the very end, the court may hold Mason and Mechlenburg liable for the total loss to all victims of the Vavasseur scheme.

Defendants argue that the imposition of joint and several liability for the total loss is foreclosed in this case because the court has already apportioned liability as to Hardesty and June. They aver that 18 U.S.C. § 3664(h) provides two mutually exclusive options: (1) joint and several liability for the total loss for all defendants, or (2) apportionment. This argument follows from a narrow reading of the statute:

> If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make *each* defendant liable for payment of the full amount of restitution *or* may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.

18 U.S.C. § 3664(h) (emphasis added). While the Fourth Circuit has not addressed this issue, other appellate courts have generally not employed such a constrained reading of a court's discretion under Section 3664(h). *See United States v. Scott*, 270 F.3d 30, 53 (1st Cir. 2001) (upholding order imposing liability for full amount of loss on one defendant, and partial amounts on other defendants)); *United States v. Bunn*, 277 Fed. App'x 25, 28 (2d Cir. 2008) (unpublished opinion) (same); *See also Stutesman*, 391 Fed. App'x at 648-49 (remanding where district court had imposed liability for total loss on three defendants, so that the court could apportion one defendant's liability "commensurate with his contribution to the government's loss.").

But while the court has doubts about the validity of the defendants' objection, it need not decide the matter. Because restitution is essentially a compensatory remedy, the court should attempt to avoid double recovery. *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006); *See also* 18 U.S.C. § 3664(j)(2) (requiring amounts paid to a victim in restitution to be reduced

by amounts recovered for the same loss as civil damages). Were the court to enter a restitution order in the amount of the outstanding balance due to victims, $24,778,945, it is conceivable, albeit highly unlikely, that the victims could recover in excess of their entitlement. As already noted, the court has entered restitution orders against co-defendants June and Hardesty in the total amount of $1,815,000. As it is also the intention of the court that June and Hardesty not benefit from any recovery from Mechlenburg and Mason, an appropriate solution is, effectively, to apportion the entire outstanding balance among Mechlenburg, Mason, June, and Hardesty.

Because the court may not disturb the restitution orders imposed on June and Hardesty, they remain liable for a total of $1,815,000. However, the court will apportion the remaining $22,963,945 to Mechlenburg and Mason. This sum reflects the defendants' central role in the conspiracy, and is appropriate for all of the reasons that liability for the total loss would otherwise be appropriate. Mechlenburg and Mason will be jointly and severally liable for such sum, which will be offset by any further recovery from Dowdell. However, such sum will not be offset by any further recovery from June or Hardesty. Nor will any recovery from Mechlenburg or Mason offset the obligations of June and Hardesty.

## II.

The court must determine the manner and schedule according to which restitution is paid, in consideration of the financial resources, assets, projected earnings, and financial obligations of the defendants. 18 U.S.C. § 3664(f). The Magistrate Judge has determined that Mechlenburg is entitled to court-appointed counsel, and the Presentence Report concluded that she is unable to pay a fine. She is currently serving a term of incarceration and will likely be deported to Denmark upon release from prison. Moreover, she has no college degree and is barred from working as an investment professional. Similarly, Mason will earn little income while serving

6

his current prison sentence, and it is likely that he will lose his license to practice law. Both defendants will be in their mid-sixties upon release from imprisonment, and it is doubtful that they will be able to find gainful employment, considering their felony convictions, and their likely inability to find work in their chosen fields.

Therefore, Mason and Mechlenburg will pay restitution as follows: (1) Payment in equal monthly installments of $25.00 for the duration of their respective terms of imprisonment, to commence 30 days from the date of the court's order; and (2) payment in equal monthly installments of $200 to commence 60 days after release from imprisonment.

The Clerk of the Court is directed to send a certified copy of this opinion and the accompanying order to all counsel of record.

Entered this 10th day of March, 2011.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE